UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| **RONA VILLAGE OF BEAVERCREEK HOMEOWNERS ASSOCIATION, INC.,** | : : : : : : : : : : | Case No. 3:23-cv-88 |
| Plaintiff, | | |
| v. | | Judge Thomas M. Rose |
| | | Magistrate Judge Caroline H. Gentry |
| **PEKIN INSURANCE COMPANY**, | | |
| Defendant. | | |

**ENTRY AND ORDER OVERRULING PLAINTIFF'S MOTION FOR RECONSIDERATION BY DISTRICT COURT JUDGE OF UMPIRE APPOINTMENT (DOC. NO. 24)**

Pending before the Court is Plaintiff's Motion for Reconsideration by District Court Judge of Umpire Appointment ("Motion"). (Doc. No. 24.) Plaintiff Rona Village of Beavercreek Homeowners Association, Inc., ("Plaintiff") alleges that the Order (Doc. No. 22) affirming the appointment of Ron Lucy ("Lucy") as an umpire for the appraisal of the amount of loss to Plaintiff's properties, that forms the underlying controversy in this action, was clearly erroneous and/or contrary to law. (*Id*. at PageID 792.) Defendant Pekin Insurance Company ("Defendant") argues that the insurance policy between the Parties does not support Plaintiff's ability to appeal the Magistrate Judge's order or read new terms into the policy. (Doc. No. 25.)

For the reasons explained below, the Court **OVERRULES** the Motion.

**I.      BACKGROUND**

Plaintiff is a homeowner's association that owns 21 properties in Beavercreek, Ohio. (Doc. No. 24-1 at PageID 795.) The properties were insured by Defendant when they were struck by a storm in March 2021. (*Id*.) A dispute arose between the parties over the amount of indemnification

owed to Plaintiff as a result of the storm and Plaintiff demanded an appraisal pursuant to its policy with Defendant. (*Id.*) Specifically, the policy provides:

**Appraisal**

If we and you disagree on the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

    **a.**    Pay its chosen appraiser; and
    **b.**    Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

(Doc. No. 7-1 at PageID 196.) Pursuant to the appraisal provision, Plaintiff selected Arthur Grandinetti ("Grandinetti") and Defendant selected Mark Stromberger ("Stromberger") to serve as their respective appraisers. (Doc. No. 24-1 at PageID 796.)

Grandinetti and Stromberger each proposed a number of candidates to serve as the umpire. (Doc. No. 23-1 at PageID 772.) As part of his standard vetting process, Grandinetti communicated with each of the candidates proposed by Stromberger. (*Id.* at PageID 773.) One of the candidates Grandinetti interviewed was Lucy of EES (Engineering and Environmental Services) Group. (*Id.* at PageID 776.) Grandinetti stated that Lucy refused to answer certain questions, could not recall whether he had worked with Defendant or Stromberger's company in the past, and that he became argumentative and ended the call early. (*Id.*) Ultimately, the appraisers could not agree on an umpire. (Doc. No. 24-1 at PageID 796.)

On June 6, 2023, Plaintiff filed Plaintiff's Motion to Appoint Appraisal Umpire. (Doc. No. 10.) Defendant filed its opposition on June 20, 2023. (Doc. No. 18.) On June 28, 2023, prior to the filing of a reply by Plaintiff, the Magistrate Judge entered an order appointing Lucy as the

2

umpire in this matter. (Doc. No. 19 at PageID 712.) The next day, June 29, 2023, Plaintiff filed a motion seeking permission to file a reply in support of its motion and moving for reconsideration of the Magistrate Judge's order. (Doc. No. 20.) On July 5, 2023, the Magistrate Judge entered an order granting Plaintiff permission to file its reply, but affirming the appointment of Lucy as umpire. (Doc. No. 22 at PageID 758-59.) The Magistrate Judge acknowledged that she had ruled prior to the deadline due to a clerical error on the part of court staff. (*Id*. at PageID 758.)

Plaintiff filed the present Motion on July 10, 2023 (Doc. No. 24) and Defendant filed its response on July 17, 2023 (Doc. No. 25). Plaintiff filed its reply on July 20, 2023. (Doc. No. 26.) The Motion is fully briefed and ripe for review and decision.

## II. STANDARD OF REVIEW

Pursuant to Fed. R. Civ. P. 72(a) a party may object to a Magistrate Judge's order on non-dispositive issues. *Bonasera v. Pennsylvania Nat'l Mut. Cas. Ins. Co.*, No. 2:19-cv-3817, 2021 U.S. Dist. LEXIS 85835, at *1-2, 2021 WL 1785618, at *1 (S.D. Ohio May 5, 2021) (citing *Langenfeld v. Armstrong World Indus., Inc.*, 299 F.R.D. 547, 550 (S.D. Ohio 2014)); *see also* 28 U.S.C. § 636(b)(1)(A). In reviewing the parties objections, "[a] 'clearly erroneous' standard applies to factual findings made by the magistrate judge, while legal conclusions are reviewed under the more lenient 'contrary to law' standard." *Gillispie v. Miami Twp.*, No. 3:13-cv-416, 2019 U.S. Dist. LEXIS 105656, at *4, 2019 WL 2603571, at *1 (S.D. Ohio June 25, 2019) (citing *Am. Coal Sales Co. v. N.S. Power Inc.*, No. 2:06-cv-94, 2009 U.S. Dist. LEXIS 13550, at *36-37, 2009 WL 467576, at *13 (S.D. Ohio Feb. 23, 2009)). "These standards 'provide considerable deference to the determinations of magistrates.'" *Am. Coal Sales*, 2009 U.S. Dist. LEXIS 13550, at *36, 2009 WL 467576, at *13 (quoting *In re Search Warrants Issued August 29, 1994*, 889 F. Supp. 296, 298 (S.D. Ohio 1995)).

A magistrate judge's factual findings are considered clearly erroneous if, on the entire evidence, the court is left with the definite and firm conviction that a mistake has been committed. *Am. Coal Sales*, 2009 U.S. Dist. LEXIS 13550, at *36, 2009 WL 467576, at *13 (citing *Heights Cmty. Congress v. Hilltop Realty Corp.*, 774 F.2d 135, 140 (6th Cir. 1985), *cert. denied*, 475 U.S. 1019, 106 S.Ct. 1206, 89 L.Ed.2d 318 (1986)); *United States v. Perry*, 908 F.2d 56, 58 (6th Cir. 1990) (quoting *Parts and Elec. Motors, Inc. v. Sterling Elec., Inc.*, 866 F.2d 228, 233 (7th Cir.1988), *cert. denied*, 493 U.S. 847, 110 S.Ct. 141, 107 L.Ed.2d 100 (1989) ("'[t]o be clearly erroneous' … 'a decision must strike us as more than just maybe or probably wrong; it must ... strike us as wrong with the force of a five-week-old, unrefrigerated dead fish'")).  The test is whether there is evidence in the record to support the magistrate judge's findings and whether the magistrate judge's construction of that evidence is reasonable. *Id*.  "A magistrate judge's legal conclusion is contrary to law if the court determines that the magistrate judge's legal conclusions contradict or ignore applicable precepts of law, as found in the Constitution, statutes, or case precedent." *Gillispie*, 2019 U.S. Dist. LEXIS 105656, at *4-5, 2019 WL 2603571, at *2 (citing *Am. Coal Sales*, 2009 U.S. Dist. LEXIS 13550, at *37, 2009 WL 467576, at *13).

### III.    ANALYSIS

Plaintiff argues that established law across the country requires that umpires in appraisal cases be disinterested and neutral. (Doc. No. 24-1 at PageID 799-801.)  The appointment of Lucy, Plaintiff argues, was clearly erroneous and/or contrary to law because Lucy demonstrated in his interview that he does not satisfy the disinterested and neutral standard.  (*Id*. at PageID 801-02.) Plaintiff further argues that Lucy's behavior during the call with Grandinetti was unprofessional and this too should disqualify him.  (*Id*. at PageID 802-03.)

4

In response, Defendant argues that, pursuant to the policy, the Magistrate Judge is "a judge of a court having jurisdiction," and, therefore, the Motion should be denied on those grounds. (Doc. No. 25 at PageID 806.)  Moreover, Defendant argues that the neutral and disinterested standard that Plaintiff advocates for should not be read into the policy because it is contrary to Ohio law on contract interpretation. (*Id*. at PageID 806-08.)  Finally, Defendant argues that Plaintiff has not presented sufficient evidence to demonstrate that Lucy is not neutral and disinterested or that a conflict of interest exists. (*Id*. at PageID 808-10.)

      a. **Jurisdiction to Consider Objection**

The Court will first turn to Defendant's argument that, the Magistrate Judge is "a judge of a court having jurisdiction," and, therefore, the Motion should be denied on those grounds. (Doc. No. 25 at PageID 806.)  Defendant argues that there is no policy that states the district judge is the only judge who fulfills the "a judge of a court having jurisdiction" portion of the appraisal clause. (*Id*.)  In Defendant's opposition to Plaintiff's motion seeking to lodge objections to the Magistrate Judge's original order, Defendant argued, "[t]he policy does not allow for the parties to object to or challenge the Judge's selection of the umpire…  Moreover, the policy does not give the Judge any authority or jurisdiction once the umpire selection is made." (Doc. No. 21 at PageID 755.)

Defendant does not cite any authority in support of its position that, since the policy does not provide for an appeal of a judge's order appointing an umpire, the Court was deprived of jurisdiction once the umpire was appointed.  This argument is unavailing.  The Sixth Circuit has consistently held, "[d]istrict courts possess the authority and discretion to reconsider and modify interlocutory judgments any time before final judgment." *Rodriguez v. Tennessee Laborers Health & Welfare Fund*, 89 F. App'x 949, 952 (6th Cir. 2004); *Leelanau Wine Cellars Ltd., v. Black & Red, Inc.*, 118 F. App'x 942, 945 (6th Cir. 2004) (internal citations omitted) ("[d]istrict courts have

5

inherent power to reconsider interlocutory orders and reopen any part of a case before entry of a final judgment. A district court may modify, or even rescind, such interlocutory orders"). Therefore, the Court finds that it has jurisdiction to consider Plaintiff's objections to the Magistrate Judge's order.

    b. **<u>Neutral and Disinterested Standard</u>**

        i. **<u>Applicability of Neutral and Disinterested Standard</u>**

The Parties disagree on whether the terms "neutral" and "disinterested" should be read into the appraisal clause of the policy as a criterion for the selection of the umpire. (Doc. Nos. 24-1 at PageID 799-801; 25 at PageID 806-08.) Plaintiff argues that a number of courts across the country have read an impartiality and neutrality requirement into insurance contracts with respect to the selection of an umpire. (Doc. No. 24-1 at PageID 800.) Defendant counters by citing to caselaw holding that, in Ohio, a court should not modify the unambiguous language of a contract. (Doc. No. 25 at PageID 807.)

As it relates to the umpire, the appraisal clause states, "The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of loss. If they fail to agree, they will submit their differences to the umpire." (Doc. No. 7-1 at PageID 196.) Therefore, the policy does not specify any additional qualifications for the umpire beyond their selection by either the parties' appraisers or "a judge of a court having jurisdiction."

However, the Court need only look to the definition of umpire to resolve this issue. Black's defines umpire as, "[a]n *impartial* person appointed to make an award or a final decision, usu. when a matter has been submitted to arbitrators who have failed to agree." *Umpire*, BLACK'S LAW DICTIONARY (11th ed. 2019) (emphasis added). Merriam-Webster similarly defines an umpire as,

6

"one having authority to decide finally a controversy or question between parties: such as [a]: one appointed to decide between arbitrators who have disagreed[;] [b]: an *impartial* third party chosen to arbitrate disputes arising under the terms of a labor agreement." *Umpire*, MERRIAM-WEBSTER (11th ed. 2023) (emphasis added). Therefore, the requirement of impartiality is already part of the contract because it is a core concept in the definition of an umpire.

### ii. Application

The Court must, therefore, decide whether the Magistrate Judge's decision to appoint Lucy as the umpire was clearly erroneous or contrary to law.

Plaintiff argues several points as evidence of Lucy's alleged bias. Grandinetti states that Lucy's company, "is known in the industry to primarily work for insurance companies." (Doc. No. 23-1 at PageID 776.) Plaintiff argues that this "demonstrates inherent bias" and shows he is not "disinterested or neutral." (Doc. No. 24-1 at PageID 802.) Moreover, Lucy refused to answer certain questions posed by Grandinetti during his telephone interview and he could not recall whether he knew Defendant's appraiser. (Doc. No. 23-1 at PageID 776.) Finally, Lucy further could not recall whether he had worked for Defendant or Stromberger's company in the past, and Grandinetti states that Lucy became argumentative and ended the call early. (*Id*.)

Defendant, in turn, argues that Plaintiff has not presented evidence showing that Lucy is not actually "disinterested or neutral." (Doc. No. 25 at PageID 808.) Defendants further argue that, aside from the phone call, Plaintiff has not provided any evidence that Lucy has any prior relationship with Plaintiff, Grandinetti, or Grandinetti's company that would create a conflict. (*Id*. at PageID 809.) Nor, Defendant argues, has Plaintiff shown any instances where Lucy has acted with bias while serving as an umpire. (*Id*.)

7

In the original order appointing Lucy, the Magistrate Judge found, "due to his relatively proximity, extensive familiarity with wind damage, accreditation as a Registered Roof Consultant, and previous experience as an umpire, Mr. Ronald Lucy is the candidate who is most well-suited to this role." (Doc. No. 19 at PageID 712.)  In affirming this initial finding, the Magistrate Judge held:

> Mr. Lucy is well-qualified for this role by training and experience, that his appointment does not create any known conflict of interests, and that his relative proximity to the property alleviates Defendants' concerns regarding travel expenses.  These facts remain true notwithstanding Plaintiff's assertions that Mr. Lucy declined to answer questions during an interview which – as Defendants note (Doc. No. 21, PageID 755) – he was under no obligation to conduct.

(Doc. No. 22 at PageID 759.)

There is ample evidence in the record to support the Magistrate Judge's findings and those findings are a reasonable construction of the evidence.  *See Am. Coal Sales*, 2009 U.S. Dist. LEXIS 13550, at *36, 2009 WL 467576, at *13 (citing *Heights Comm. Congress*, 774 F.2d at 140).  First, the record shows that Lucy is well-qualified for the position as he has 25 years of experience in the field, has attended hundreds of hours of continuing education, and is a Registered Roof Consultant and a Registered Roof Observer.  (Doc. No. 18-9 at PageID 705.)  Second, Lucy is based in Dublin, Ohio which puts him in close proximity to the properties in question.  (*Id*.)  Third, Plaintiff has not provided any evidence that Lucy's appointment creates a conflict of interest.  The Court further agrees with the Magistrate Judge that Lucy's refusal to answer questions during a voluntary interview does not affect these findings.  While there may have been tension during this interview, the Court has not been presented with any evidence that Lucy will not be able to perform his duties impartially.  Therefore, the Court finds that the Magistrate Judge's ruling was not clearly erroneous or contrary to law.

**IV.** **CONCLUSION**

For the foregoing reasons, the Court **OVERRULES** Plaintiff's Motion for Reconsideration by District Court Judge of Umpire Appointment (Doc. No. 24).

**DONE** and **ORDERED** in Dayton, Ohio, this Monday, August 14, 2023.

s/Thomas M. Rose

_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE
